United States District Court
Southern District of Texas
**ENTERED**
November 22, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-00154 |
| | § | |
| HELMERICH & PAYNE | § | |
| INTERNATIONAL DRILLING CO., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

The Court held a hearing on three motions on November 18, 2021. The Court heard the Motion for Summary Judgment filed by Defendants WPX Energy Production, LLC, WPX Energy Permian, LLC, and WPX Energy Services Company, LLC (together, "the WPX Defendants") (Doc. 61); the Rule 56(d) Motion for Continuance filed by Plaintiff Brandon Jenkins (Doc. 66); and the Joint Motion for Continuance of Discovery Deadline and Trial filed by Plaintiff Brandon Jenkins and Defendant Helmerich & Payne International Drilling Co. ("H&P") (Doc. 62). At the hearing, the Court ruled from the bench. The Court provides this Memorandum and Order to further document its rulings and reasoning.

I. **JENKINS' RULE 56(d) MOTION**

A. *Standard of Review*

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

1

discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). Motions for additional discovery under Rule 56(d) are " 'broadly favored and should be liberally granted' . . . to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.' " *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)). To obtain a continuance under Rule 56(d), the party responding to the motion for summary judgment "must (i) request extended discovery prior to the district court's ruling on summary judgment, (ii) put the district court on notice that further discovery pertaining to the summary judgment motion is being sought, (iii) demonstrate to the district court specifically how the requested discovery pertains to the pending motion, and (iv) diligently pursue relevant discovery." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1155–56 (5th Cir. 1993) ("*Traillour Oil*").

The first two prongs of the *Traillour Oil* standard only require timely filing and proper notice. The third prong, meanwhile, demands that the party responding to the motion for summary judgment " 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.' " *Id.* (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)). The party " 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.' " *Id.* (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). "[A] plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

Notably, Jenkins left out the fourth prong of the *Traillour Oil* standard in his brief. (Doc. 66 at 4–5.) Regardless, to be granted a continuance, "the non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth." *Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992); *see Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (If "the nonmoving party has not diligently pursued discovery of [the requested] evidence, the court need not accommodate the nonmoving party's belated request.").

B. *Analysis*

The first two prongs of the *Traillour Oil* test are easily satisfied here. Jenkins' Motion makes clear that: (i) he requested discovery before a summary judgment ruling; and (ii) he put the Court on notice that further discovery was sought. Jenkins' Motion also passes muster under the third prong: he contends that additional discovery about his employment, the incident, and the corporate structure of WPX is necessary to "refute the WPX Defendants' claims that they were not Plaintiff's employer and that they had no control over H&P or MS Directional and had no notice of the condition at the oil well." (Doc. 66-2 at 3.) Because the central thrust of the WPX Defendants' Motion is that they exercised no control over Jenkins' work, Jenkins seeks facts that relate to the WPX Defendants' Motion.

Nevertheless, Jenkins' position unravels on the fourth prong of the *Traillour Oil* standard. The parties stated in their initial Joint Discovery/Case Management Plan that they "anticipate[d] that discovery in this matter should be straight-forward." (Doc. 24 at 3.) There, Jenkins also indicated that he "fully expect[ed] to complete depositions by the end of the discovery period." (Id. at 5.) The parties made their initial disclosures on April 24, 2020. (Doc. 24 at 4.) The parties then had sixteen months for discovery. During the pendency of the discovery period, however,

3

Jenkins neither requested nor noticed a single deposition. (Doc. 64 at 1.) Nevertheless, Jenkins now claims that "the fact discovery in this case is in its infancy," and that "barely any fact or expert witnesses have been deposed." (Doc. 66-2 at 3.) Indeed, Jenkins argues that his own deposition has only been partly completed. (Doc. 62 at 3.) But Jenkins' explanations for the delay fall short.

Jenkins' Motion lacks any legitimate explanation as to why discovery could not be completed in the sixteen months allotted. Sixteen months should be more than enough time for discovery in a simple industrial slip-and-fall case. Yet Jenkins' only explanation for the delay is that he "could not have obtained [the necessary] information, available primarily from the WPX Defendants, at any time before this motion." (*Id.*) Why? Jenkins does not say. As a result, Jenkins' assertion that he "has been diligent in prosecuting this case" sits unsupported. (*Id.* at 4.) That assertion is also impossible to square with the fact that Jenkins neither requested nor noticed a single deposition during the pendency of the discovery period. And while Jenkins' counsel referred to the COVID-19 pandemic as one possible explanation, the pandemic is no get-out-of-jail-free card. Jenkins could have deposed witnesses by videoconference during the sixteen months in which discovery was open. He did not. Put simply, then, Jenkins failed to show that he diligently pursued discovery.

This Court is not the first to confront a party seeking a continuance despite a lack of diligence in pursuing discovery. In *Transamerica Ins. Co. v. Avenell*, the district court rendered summary judgment and denied a cross motion for a continuance nine months after the suit was initially filed. 66 F.3d 715, 721 (5th Cir. 1995) (per curiam). There, the party seeking the continuance "failed to comply with the district court's discovery plan in any respect" and "failed to depose—indeed, they failed even to request to depose—a single . . . agent or employee" from the nonmoving party. *Id.* Because "the only barrier to discovery was the [movant's] lack of

4

diligence," the Fifth Circuit affirmed the district court's denial of the continuance. *Id.* In that case, nine months was "more than sufficient time in which to develop evidence." *Id.* In the context of Rule 16(b)(4), courts have also found nine months to be an adequate period for discovery and refused extensions where the moving party could not demonstrate diligence. *See e.g.*, *Rodrigues v. US Bank Nat'l Ass'n*, 2021 WL 2077650, at *2 (N.D. Tex. May 24, 2021) (noting that the movant's failure to depose any witnesses until the last day of the nine-month discovery period represented a lack of diligence and could not be excused by the movant's recent change in counsel).

The same reasoning attaches here. Jenkins had sixteen months to conduct discovery in a simple industrial slip-and-fall case. He failed to notice or request a single deposition during that time. A continuance would ramify outward and cause delays for other parties. And it is hardly the fault of the WPX Defendants, who have been forced into a defensive posture for nearly twenty months, that Jenkins failed to request or notice a single deposition during the discovery period. As a result, the Court must **DENY** Jenkins' Motion under Rule 56(d) (Doc. 66).

## II. JENKINS' GENERAL MOTION FOR A CONTINUANCE

Jenkins also makes a general motion, joined by H&P but opposed by the WPX Defendants, for a continuance. The analysis here mirrors the considerations that applied to Jenkins' Motion under Rule 56(d). "The decision to grant or deny a continuance lies within the sound discretion of the district court." *Rhodes v. Amarillo Hospital District*, 654 F.2d 1148, 1153 (5th Cir. 1981). Relevant factors include (1) the amount of time available; (2) the likelihood of prejudice from denial; (3) the availability of discovery thus far in the litigation; (4) the complexity of the case; and (5) whether the party seeking the extension cannot meet the schedule despite taking all due diligence. *United States v. Sarabia*, 2021 WL 3775210, at *2 (5th Cir. Aug. 25, 2021); *United*

*States v. Hughey*, 147 F.3d 423, 431 (5th Cir. 1998). The Fifth Circuit reviews rulings on continuances for arbitrariness or unreasonableness. *Sarabia*, 2021 WL 3775210 at *2.

Just as with Jenkins' Rule 56(d) Motion, the time elapsed and Jenkins' lack of diligence preclude a continuance. The parties have had over sixteen months to conduct discovery. That is more than enough time, particularly given that this is essentially a simple slip-and-fall case. The only added complexity comes from the industrial context and the contractual relationships between the parties. It is thus hard to imagine how, nineteen months after this case was removed to federal court, Jenkins has not only failed to complete discovery, but also has "not requested or noticed a single deposition." (Doc. 64 at 1.) In addition, there is no excuse for the failure to file this Motion when the discovery deadline originally expired on September 3, 2021. By waiting until October 6, the movants backed themselves, and the Court, further into a corner. And the pandemic alone cannot excuse this delay. Thus, even if extending discovery might unearth helpful facts, the Court must also **DENY** this Motion for a Continuance (Doc. 62).

### III. THE WPX DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Denying a continuance does not end the inquiry, however. The Court must still adjudicate the WPX Defendants' Motion for Summary Judgment on the existing record.

#### A. Standard of Review

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

B. *Analysis*

Jenkins' claims against the WPX Defendants sound in negligence. (*See* Doc. 31 at 5 (claiming that all Defendants were negligent and that Jenkins sustained injuries due to the Defendants' negligence).) "[A] person injured on another's property may have either a negligence claim or a premises liability claim against the property owner." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)). "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises liability principles apply." *Id.* A plaintiff may not go to trial with both negligent activity and premises defect claims against a landowner. *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014).

7

Chapter 95 of the Texas Civil Practice & Remedies Code grants liability protection to property owners for both premises-liability and negligent-activity claims. *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 562 (Tex. 2016). Under § 95.003, a property owner cannot be liable for personal injury to covered contractors, subcontractors, or employees of the same unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury . . . and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code § 95.003. Chapter 95 is the sole means of recovery for plaintiffs asserting negligence claims against covered property owners. *See Ineos USA, LLC*, 505 S.W.3d at 561–62 (stating that Chapter 95 applies to both premises-liability claims and negligence-based claims and that Chapter 95 is the plaintiff's "sole means of recovery" if it applies). Here, Jenkins does not dispute that the WPX Defendants are covered property owners. (*See* Doc. 66 at 7–8.) Because Jenkins brings negligence claims against the WPX Defendants, Jenkins must overcome the hurdle imposed by § 95.003 to recover. To wit, Jenkins argues that the WPX Defendants are liable notwithstanding Chapter 95 because they "had extensive control over the manner in which the work was performed" and "had actual or constructive knowledge of the slippery and dangerous condition on the oil rig." (*Id.* at 8, 10.) Unfortunately for Jenkins, however, there is no genuine issue of material fact as to whether the WPX Defendants exercised or retained control over Jenkins' work: they did not.

The right to control must be over the "operative detail of the contractor's work." *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex.App.-Houston [14th Dist.] 2007). "The requisite control can be contractual or actual." *Petri v. Kestrel Oil & Gas Properties, L.P.*, 878 F. Supp. 2d 744, 772 (S.D. Tex. 2012). The WPX Defendants lacked contractual control over the

8

operations at the well site. In an affidavit, Bryan Knopp, the former Drilling Manager of WPX, states that the WPX Defendants did not retain the right to direct the manner or methods of the operations at the well. (Doc. 66-1 at 1–2.) Jenkins does not challenge this point. Nevertheless, Jenkins contends that the WPX Defendants exercised actual control over his work. The primary bastion of support for this argument is Jenkins' deposition:

> Q: And did you have a -- a -- I presume you had daily interactions with -- with the HP folks, the rig manager, the driller, that type of thing?
> A. Yeah. Well, yeah. We had a safety meeting every morning with WPX, all the rig managers, drillers, toolpushers. Yeah. We had, absolutely.
> Q. Okay. Your -- your interaction with the WPX company rep other than that safety meeting in the mornings, would you have any other interaction with the WPX rep on site --
> A. Absolutely all --
> Q. -- on a daily basis?
> A. Pretty much all day every day.
> Q. Okay. And -- and explain to me how that would go, how the interactions would go.
> A. Either we were -- depending on what we were doing that day, if we were tripping or putting pipe in a hole, picking up DHA or something like that or if we had an equipment failure that we were checking out, we would talk to them. And plus he -- they would come over to our trailer all the time to ask information or they'd call us on the phone during the day. So, I mean, I couldn't tell you even remotely -- come close to telling you how many times I interacted with them all day long every day.
> Q. He -- he -- the company -- the company rep is either asking you questions about where you guys were standing or what you were getting ready to do; is that what you're saying?
> A. Yes, sir. E-mails, what formations were coming, how drilling is going, any issues or, you know, any other problems that – that we see that we come across during the day. Yeah, absolutely. . . .
> Q. Yeah. Between 2:30 and the time of the accident, which you say was 5:30 -- . . . . -- what were you doing?
> A. Numerous things, checking tools on the ground, bringing equipment up to the rig floor that we need that was -- I have a little small bag that I can carry in one hand that has all my tools on it. We were all up on the drill floor both night and day, WPX company reps, the toolpusher, both directional drillers. We're all up there about to come to the tools, so we were all up there. We had a safety meeting with the JSA. We talked about how the process of what order we want to take down tools, how we want them to be handled, taking those down, and picking the other ones up.

(Doc. 66 at 8–9 (emphasis removed).) The problem for Jenkins is that his deposition does not create a genuine issue of material fact as to whether the WPX Defendants "exercise[d] or retain[ed]" control over his work. Certainly, Jenkins' deposition conflicts with parts of Knopp's affidavit. For example, Jenkins testifies that he interacted with WPX company representatives at the well site on a frequent basis, whereas Knopp submits that there were no WPX employees at the site. But that dispute alone does not defeat the WPX Defendants' Motion. Even if there were WPX representatives at the well site, the evidence does not indicate that those representatives exercised control over Jenkins' work.

In his Response, Jenkins argues that he "testified that the WPX Defendants ran JSA meetings daily, were present on the oil rig day and night, and inquired and directed [him] on 'what formations were coming, how drilling is going, any issues or . . . any other problems . . . that come across during the day.' " (Doc. 66 at 16.) If that were true, Jenkins would have a good argument for the exercise of control. But that is not what Jenkins said. Jenkins did not testify that a WPX representative *ran* daily JSA meetings; he testified that a WPX representative was *present* at the JSA meetings. (*See id.* at 8 ("We had a safety meeting every morning with WPX, all the rig managers, drillers, [and] toolpushers.").) And Jenkins did not testify that a WPX representative *directed* him on formations, drilling, and issues that popped up during the day; he testified that a WPX representative *asked him questions* about formations, drilling, and issues that popped up during the day. (*See id.* at 9 (Q: "The company rep is either asking you questions about where you guys were standing or what you were getting ready to do[?]" A: "Yes sir, e-mails, what formations were coming, how drilling is going, any issues or, you know, any other problems that – that we see[.]").) Put simply, then, Jenkins never testified that a WPX representative controlled his work.

10

Jenkins' testimony suggests that had the WPX Defendants been absent, the operations at the site would have proceeded in the same manner. At most, Jenkins testified that a WPX representative was present and gathered information. But "inspect[ing] progress [and] receiv[ing] reports" cannot beget liability. TEX. CIV. PRAC. & REM. CODE § 95.003. Because Jenkins' deposition indicates that WPX representatives were simply present on the rig, inspected progress, and received reports, the evidence is uncontroverted that the WPX Defendants did not "exercise or retain some control over the manner in which the work [was] performed" other than "inspect[ing] progress [and] receiv[ing] reports." *See id.*

Jenkins' deposition, meanwhile, is the only evidence that he can muster to support his theory that the WPX Defendants controlled his work.[1] Thus, there is no genuine issue of material fact as to whether the WPX Defendants "exercise[d] or retain[ed] some control over the manner in which" Jenkins' work was performed: they did not. And because "Chapter 95 applies 'to all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees,' " all of Jenkins' negligence claims against the WPX Defendants must

---

[1] Jenkins also points to an "expert report" from Russell Kendzior in his Response. Kendzior's report concludes that "WPX, as the operator of the oil well, knew or should have known of the dangerous condition of the oil rig platform and stairway prior to [Jenkins'] slip and fall." (Doc. 66-4 at 3.) The WPX Defendants, however, object to any consideration of Kendzior's report because his "training and experience is in slip and fall prevention and causation" and he "has no experience, knowledge, skill, training, or education that qualifies him to opine as to who (1) had the duty to maintain the stairs on H&P's drilling rig, or [(2)] who knew or should have known if a hazardous condition existed on the night of [Jenkins'] accident." (Doc. 68 at 3.) The WPX Defendants are correct that Kendzior's report has no bearing on whether they exercised or retained control over Jenkins' work. Kendzior has extensive experience in floor safety and the prevention of slip-and-falls. (Doc. 66-4 at 4.) Kenzior's expertise has nothing to do with who had a legal duty. As such, Kenzior cannot help the Court on the issues relevant to this Motion under Federal Rule of Evidence 702. *See* FED. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if," among other factors, "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]").

therefore fail. *See Ineos USA, LLC*, 505 S.W.3d at 562 (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 50 (Tex. 2015)). Consequently, the Court **GRANTS** the WPX Defendants' Motion for Summary Judgment.[2]

C. *Jenkins' Employment Argument*

To get around the strictures of Chapter 95, Jenkins also argues that "the WPX Defendants may be liable as [his] true employer under the Texas Supreme Court's opinion in *Waste Management of Texas, Inc. v. Stevenson*." (Doc. 66 at 15.) Jenkins' Complaint, however, explicitly states that MS Directional was his employer. (Doc. 31 at 4.) And even viewing Jenkins' materials solicitously in his favor, this argument goes nowhere fast. *Stevenson* was expressly concerned with whether an individual is an employee "for workers compensation purposes." *Waste Mgmt. of Texas, Inc. v. Stevenson*, 622 S.W.3d 273, 277 (Tex. 2021). Here, of course, Jenkins brings no workers compensation claims. But even if the Court ignored *Stevenson*'s context and simply applied the test therein, Jenkins would still be out of luck. After all, *Stevenson* makes clear that " '[t]he test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work.' " *Id.* (quoting *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (per curiam)). In evaluating "right to control," court must look to " 'traditional indicia, such

---

[2] The parties also go back and forth as to the sufficiency of the evidence on the other elements of Jenkins' negligence claims. Because Chapter 95 is the exclusive mechanism for recovering in negligence against a covered property owner, however, there is no need to go into each individual negligence claim. Jenkins' failure to get around the liability protection baked into § 95.003 is fatal to all of his negligence claims against the WPX Defendants. Moreover, Jenkins only contends that the WPX Defendants owe him a duty because they purportedly exercised "extensive control over the manner in which the work was performed on the oil rig." (Doc. 66 at 14.) Because the evidence is uncontroverted that the WPX Defendants did not exercise control over Jenkins' work, however, the WPX Defendants also did not owe him a duty of care under his general negligence theory.

as the exercise of actual control over the details of the work that gave rise to the injury.' " *Id.* at 278 (quoting *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 477 (Tex. 2005)). Thus, "[r]ather than focus on the legal question of who had the contractual right to control the plaintiff's work, [courts look] instead to the factual question of who exercised the right to control as a practical matter in the course of the parties' daily work." *Id.* at 279. As discussed in Part III-B, the evidence does not indicate that the WPX Defendants "exercised the right to control as a practical matter in the course of" Jenkins' work. The evidence shows that the WPX Defendants observed the work on the rig, not that they exercised actual control. Thus, because *Stevenson* replicates the analysis from Part III-B, Jenkins' attempt to hold the WPX Defendants liable as his employer also fails.

## IV. CONCLUSION

For the reasons described above and on the record at the November 18, 2021 hearing, the Court **DENIES** the Rule 56(d) Motion for Continuance filed by Plaintiff Brandon Jenkins (Doc. 66), **DENIES** the Joint Motion for Continuance of Discovery Deadline and Trial filed by Plaintiff Brandon Jenkins and Defendant Helmerich & Payne International Drilling Co. ("H&P") (Doc. 62), and **GRANTS** the Motion for Summary Judgment filed by the WPX Defendants.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 22nd day of November, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE