United States District Court
Southern District of Texas
**ENTERED**
December 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-00154 |
| | § | |
| HELMERICH & PAYNE | § | |
| INTERNATIONAL DRILLING CO., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Before the Court is the Motion to Exclude Russell Kendzior filed by Defendant Helmerich & Payne International Drilling Co. ("H&P"). (Doc. 81.) The Court held a hearing on that *Daubert* Motion and ruled from the bench. The Court **GRANTED** the Motion **IN PART** and **DENIED** it **IN PART**. The Court provides this Memorandum and Order to further document its rulings and reasoning.

## I.     BACKGROUND

According to the Second Amended Complaint, Plaintiff Brandon Jenkins worked for MS Directional on an oil rig stationed near Mentone, Texas. (Doc. 31 at 3.) H&P owned and operated the rig. (*Id.* at 4.) On August 24, 2019, Jenkins was descending some stairs on the rig when "he slipped on oil-based mud that had accumulated on the stairs and sustained serious injuries" to his legs and back. (*Id.* at 3.) The mud was generated by active drilling operations. (Doc. 81 at 1.) Jenkins has sued several defendants for negligence, including H&P, AIP, Inc. ("AIP"), and Patterson-UTI Energy, Inc. ("Patterson"). Jenkins has designated Russell Kendzior as his liability expert. (*Id.*)

1

## II.       STANDARD OF REVIEW

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under the Federal Rules, then, the court must ensure that all proffered expert testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). To assess the reliability of expert testimony, the court "must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' " *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Daubert*, 509 U.S. at 592–93). " 'If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.' " *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). " '[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.' " *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The proponent of the expert must "prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The trial judge's discretion "will not be disturbed on appeal unless manifestly erroneous." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (internal quotations omitted).

## III.   KENDZIOR'S EXPERT REPORT

Kendzior opens his expert report by describing his experience in the slip-and-fall industry:

Since 1990, I have specialized in floor safety and the investigation, cause determination, and prevention, of slip-and-fall accidents in the work place; consulted with numerous businesses in the retail market as a floor safety, slip-and-fall prevention consultant[;] . . . acted as a floor safety, slip-and-fall prevention consultant with numerous insurance firms[;] . . . been retained as an expert witness in more than 1,000 litigation matters involving floor safety and slip-and-fall investigation, prevention, and causation; . . . been qualified as an expert in approximately 40 trials[;] testified as an expert in floor safety, slip-and-fall investigations, and slip-and-fall prevention in approximately two hundred depositions; investigated hundreds of slip-and-fall accidents[;] . . . determined whether an employer complied with relevant safety and health standards; . . . attended numerous seminars and conferences relating to slip-and-fall prevention, investigation, and causation; . . . taught slip-and-fall causation, prevention and investigation techniques at the National Floor Safety Institute[;] . . . received training in floor safety and slip-and-fall prevention, investigation and causation regarding commercial and retail businesses on a continuing basis from 1986 to the present from such organizations and companies as the OSHA, ASTM, The National Safety Council, [etc.;] . . . authored OSHA's Self-Inspection Checklist regarding safe walking and working surfaces[;] . . . [wrote three] books on the subject of slip-and-fall prevention[;] . . . founded the National Floor Safety Institute[;] . . . [and served as] an active member of [several societies and councils dedicated to floor and slip-and-fall safety].

(Doc. 81 at 11–13.) Kendzior then describes the materials that he relied upon to evaluate this case, including: pleadings; Jenkins's deposition transcript; disclosures; answers to interrogatories; responses to requests for admission; responses to requests for production; health, safety, and environment standards and guidelines; medical records; and photographs of the rig. (*Id.* at 10.) Kendzior also includes an appendix of additional materials, including documents from the American Society for Testing and Materials and the American Society of Safety Engineers. (*Id.* at 16–31.)

The "Opinions" portion of Kendzior's report runs a little more than one page. There, Kendzior summarizes his opinions with six bullet points:

1. The condition of the oil rig platform and stairway at the time of Mr. Jenkins's fall constituted a dangerous condition and posed an unreasonable risk of harm.

2. The Defendants knew or reasonably should have known of the dangerous condition of the oil rig platform and stairway prior to Mr. Jenkins's slip and fall.

3. The Defendants failed to exercise reasonable care to reduce or eliminate the dangerous condition of the oil rig platform and stairway.

4. Prior to Mr. Jenkins's fall, the Defendants had sufficient time to be aware of the dangerous condition and to remedy the condition by way of cleaning off the mud.

5. The dangerous condition of the oil rig platform and stairway was the proximate cause of Mr. Jenkins's slip-and-fall event.

6. The manner of Mr. Jenkins's slip-and-fall and the dangerous condition of the stairway is consistent with the mechanics of a person falling while descending a stairway.

(*Id.* at 15.) To explain the basis for these opinions, Kendzior begins by noting that slip-and-fall incidents "are a leading cause of workplace injury in the energy production industry." (*Id.* at 14.) Kendzior then reasons that the stairway on the rig "was of appropriate design and material," but "it no longer provided a slip resistant surface due to the heavy buildup of drilling mud and water as generated by the drilling operation." (*Id.*) He adds that a contaminated stair tread "has a significantly lower coefficient of friction level" than a "clean and dry" tread, heightening the risk of a slip and fall. (*Id.*) Next, Kendzior says that "[i]t is the industry standard to immediately correct any known hazard once it has been identified[,] . . . [but] it appears that the Defendants failed to exercise good judgment and simply disregarded the fact that they created a pedestrian slip hazard by way of a contaminated stairway." (*Id.*) Finally, Kendzior writes that Jenkins's "slip and fall event and subsequent injuries were entirely and easily preventable had the Defendant simply

complied with the industry standards detailed above which establish the means by which hotels [sic] should provide their employees and contracted employees a safe walking surface."[1] (*Id.*)

## IV.    ANALYSIS

H&P moves to exclude Kendzior's opinions for two reasons. First, H&P contends that "Kendzior lacks any experience with oil and gas operations" and so is not qualified to serve as an expert in this case. (Doc. 81 at 5.) Second, H&P contends that Kendzior's "opinions are impermissible *ipse dixit* because [he] did not utilize a reliable methodology to reach the conclusions outlined in his expert report." (Doc. 91 at 1.) Ultimately, the Court concludes that Kendzior is qualified to serve as an expert in this case, but that several of his opinions must be excluded because they are unreliable and will not help the jury.

### A.    *Is Kendzior Qualified to Serve as an Expert?*

H&P's first argument raises a difficult question: What degree of fit is required between an expert's qualifications and the subject of their testimony? H&P concedes that Kendzior "may be qualified to offer opinions concerning slip and fall incidents at retail (or hotel) locations." (Doc. 81 at 5.) Nevertheless, H&P argues that Kendzior's lack of experience in the oil and gas industry renders him unqualified to serve as an expert in this case. (*Id.* at 6.) Jenkins, for his part, argues that "H&P fails to explain to the Court how a slip-and-fall on an oil drilling rig is different from [a] slip-and-fall incident[] in any other workplace[]." (Doc. 89 at 4.) Consequently, Jenkins contends that Kendzior is qualified to serve as an expert here.

---

[1] The Court notes that Kendzior refers to "hotels" in this section. Although this suggests that part of the report was cut and pasted from a previous report, this practice is not uncommon among experts who appear before the Court.

H&P points to three cases to support its position. First, H&P directs the Court to *Wilson v. Wood*, 163 F.3d 935 (5th Cir. 1999). In that case, Joseph Woods drove an 18-wheel truck into Aristine Wilson's car. *Id.* at 936. Wilson proceeded under a theory of negligence *per se* because Woods was apparently speeding at the time of the accident. *Id.* at 937. To support this theory, Wilson moved to qualify A.K. Rosenhan as an expert in "accident reconstruction." *Id.* During a *Daubert* hearing, however, Rosenhan revealed that he had essentially no professional experience in accident reconstruction. *Id.* Consequently, the district court held that Rosenhan was not qualified to serve as an expert. The Fifth Circuit agreed, determining that Rosenhan lacked the requisite qualifications because "his 'expertise in accident reconstruction was no greater than that of any individual with a general scientific background[.]" *Id.* at 938. Thus, "Rosenhan's claimed professional status was legitimately in doubt[.]" *Id.*

*Wilson* is far afield from the present case. In *Wilson*, the Fifth Circuit did not have to tease through the expert's qualifications to evaluate the degree of fit with the subject matter at issue; Rosenhan possessed no expert qualifications at all. Here, by contrast, Kendzior has vast experience in the slip-and-fall industry; the real question is whether that experience translates to the oil and gas context. Because *Wilson* stands for the unremarkable proposition that an individual with no expertise is not qualified to serve as an expert, it cannot support H&P's argument that Kendzior's slip-and-fall experience does not translate to the oil and gas field.

Second, H&P tries to extrapolate from *Singletary v. Atrium Finance II, LP*, 2017 WL 1400810 (S.D. Tex. Mar. 8, 2017). In that unreported case, Vantz Singletary sustained injuries when he fell into a hole in a grassy field at a Marriott hotel. *Id.* at *1. Singletary retained David Hall, a professional traffic operations engineer, as an expert. *Id.* Based on Google Earth images, Hall concluded that the hotel had recently cleared vegetation from around the hole and so should

have known about the dangerous condition on the land. *Id.* The district court, however, found that Singletary provided no evidence to show that Hall was an expert on vegetation growth or gardening. *Id.* As a result, the court deemed Hall unqualified to provide an opinion in the case. *Id.*

Like *Wilson*, *Singletary* is also distinguishable from this case. The gulf between traffic operations and gardening is so wide that Hall's expertise could not help the jury analyze the reasonableness of the hotel's landscaping efforts. Here, by contrast, Kendzior's expertise is much more closely tied to the subject of his testimony: Kendzior is a slip-and-fall expert who seeks to testify about a slip-and-fall on an oil rig. Certainly, the context of Jenkins's incident matters. But while the difference between Hall's experience and Singletary's incident was a matter of kind, the difference between Kendzior's experience and Jenkins's incident is a matter of degree. *Singletary*, then, does not control the outcome here.

Third, H&P points to *Houston-Hines v. Houston Independent School District*, 2006 WL 897209 (S.D. Tex. Apr. 4, 2006). In that unreported case, a police officer handcuffed and arrested a sixth-grade student. *Id.* at *1. The plaintiff—the student's mother—contended that the officer had used excessive force against the student. *Id.* at *2. To support that contention, the plaintiff submitted an expert report from Harold Simmons, a retired police officer who had worked in law enforcement for 29 years. *Id.* at *2–3. The district court, however, found that Simmons was unqualified to serve as an expert because he had no "experience or training in the unique challenges of law enforcement in a school setting." *Id.* What's more, Simmons's only training came decades before the incident, and he had never "been qualified to testify as an expert witness in any litigation, let alone in a case involving law enforcement in public schools." *Id.* As a result, the court concluded that while Simmons "could conceivably be found qualified in a different case

involving routine law enforcement activities, his lack of training and experience in a school situation leaves him unqualified to serve as an expert in this particular case." *Id.*

*Houston-Hines* is fairly similar to the current case. There, the district court undertook a searching examination of the expert's qualifications and drew a line between general law enforcement experience and law enforcement experience in a school setting. But *Houston-Hines* is not binding precedent, and the district court cited no caselaw to support its narrow approach. In addition, the court in that case rejected the expert in part because he lacked training and had never been qualified as an expert witness. The same cannot be said of Kendzior. Thus, the best that can be said of H&P's caselaw is that one unreported district court case favors a very tight fit between an expert's qualifications and the subject matter of their testimony.

Still, H&P's argument to narrowly construe Kendzior's qualifications is undermined by a safety inspection conducted on the rig months before Jenkins's incident. The report from that inspection evaluated the condition of the rig's stairs under two standards. (Doc. 89 at 5.) One was API RP 54, which prescribes practices for the oil and gas industry. AMERICAN PETROLEUM INSTITUTE, RECOMMENDED PRACTICE 54, 4TH EDITION (2019), https://www.api.org/-/media/Files/Publications/RP-54_e4.pdf. The other was OSHA 1910, which prescribes general safety regulations for all industries. *See* 29 C.F.R. § 1910.1 (describing the statute's purpose as providing "occupational safety and health standards which have been found to be national consensus standards or established Federal standards"). Kendzior has been recognized by OSHA "as an expert on walking and working surfaces[,] . . . provided expert testimony before an OSHA hearing on the subject in 2011[,] . . . [and was] asked by, and authored, OSHA's Self-Inspection Checklist regarding safe walking and working surfaces." (Doc. 81 at 12, 33.)  It stands to reason that if H&P's third-party inspector considered generalized OSHA standards relevant when evaluating the

8

condition of the stairs, an expert in generalized OSHA standards should have the necessary expertise to opine on the reasonableness of H&P's handling of the stairs. Thus, the safety report's treatment of general OSHA standards suggests that Kendzior's experience qualifies him to opine on the issues in this case.

*Daubert* was never designed to replace trial on the merits. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Pipitone*, 288 F.3d at 250). At the end of the day, the critical inquiry is whether Kendzior's "knowledge, skill, experience, training, or education" will help the jury "understand the evidence or to determine a fact in issue[.]" *See* FED. R. EVID. 702. Kendzior is a slip-and-fall expert. This case concerns a slip-and-fall. And while it is true that what is "dangerous" on a rig may differ from what is "dangerous" in a retail setting, H&P can attack the weight owed to Kendzior's opinion at trial. Thus, the Court concludes that Kendzior's expertise is sufficiently related to the subject matter at issue and finds and holds that he is **QUALIFIED** to serve as an expert in this case.

### B.    *Are Kendzior's Opinions Sufficiently Helpful and Reliable?*

Next, H&P argues that Kendzior's testimony should be excluded because he "has done nothing more than provide bare, unsupported opinions." (Doc. 91 at 4.) Jenkins, for his part, contends that Kendzior's opinions "are based upon his education, knowledge, training, . . . years of experience in a specialized trade that conferred unique and extensive expertise on the subject of floor safety and slip-and-fall matters[,] . . . and hundreds of pages of relevant records[.]" (Doc. 89 at 7–8.) Two cases are instructive on the reliability of expert opinions. The first case is *Brown v.*

*Illinois Central Railroad Co.*, 705 F.3d 531 (5th Cir. 2013). In that case, John Brown sued the Illinois Central Railroad Company for failing to put signals at a railroad crossing. *Id.* at 533. Brown sought to admit expert testimony from Gary Long to prove that the crossing was extrahazardous and required signals. *Id.* at 535. The Fifth Circuit noted, however, that while Long "mentioned a variety of public and private guidelines and publications on roadway design and traffic control devices," he "failed to explain how any of these authorities support[ed] [his] conclusions" concerning the condition of the crossing. *Id.* at 536. Indeed, Long simply emphasized his own "education and experience," and urged that " '[c]ontrary to some thinking, standards related to safety do not always have to be adopted by some official agency in order to exist.' " *Id.* at 536–37. Because Long could not link his analysis to reliable materials and methods, the Fifth Circuit concluded that his analysis was unreliably subjective and affirmed the district court's decision to exclude it. *Id.* at 537.

The second case is *Singletary v. Atrium Finance II, LP*, 2017 WL 1400810 (S.D. Tex. Mar. 8, 2017). In that case (which the Court also discusses in Part IV-A), David Hall sought to testify that Marriott's gardening practices were unreasonable because they left a giant hole in the grass. *Id.* at *4. But the district court noted that the plaintiff produced no "testimony regarding the standard practices in the field of land management or horticulture, nor has he provided a means of gauging the accuracy of his assertions." *Id.* Consequently, the court determined that the "report consists of nothing more than unsupported speculation and subjective belief, and so, [Hall's] opinion must be excluded." *Id.* Taken together, then, the caselaw indicates that, for an expert's testimony to be admissible, it must be the product of reliable methods. *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (" 'If an opinion is fundamentally unsupported, then it offers no

expert assistance to the jury.' " (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987))).

In Kendzior's expert report, he breaks his opinions down into six categories; the Court must go opinion-by-opinion to evaluate the reliability of each one.

1.  <u>"The condition of the oil rig platform and stairway at the time of Mr. Jenkins's fall constituted a dangerous condition and posed an unreasonable risk of harm."</u>

First, Kendzior seeks to testify that "[t]he condition of the oil rig platform and stairway at the time of Mr. Jenkins's fall constituted a dangerous condition and posed an unreasonable risk of harm." (Doc. 81 at 15.) To support this opinion, Kendzior reasons that the stairway "no longer provided a slip resistant surface due to the heavy buildup of drilling mud and water as generated by the drilling operation." (*Id.* at 14.) After all, "oil rigs . . . are frequently exposed to slippery contaminants like drilling fluids, water, and oil," and a contaminated "stair tread has a significantly lower coefficient of friction level than when clean and dry[.]" (*Id.*) But Kendzior ran no tests on the stairs or the contaminating material. He does not know what the coefficient of friction was for the contaminated stairs. He does not know the true makeup of the contaminating material. His opinion, then, is not the product of any testable methodology or evidence-based analysis. Consequently, Kendzior's opinion on the danger posed by the stairs does not appear reliable.

A similar issue cropped up in *Alsip v. Wal-Mart Stores East, LP*, 658 F. App'x 944, 948 (11th Cir. 2016). In that case, the Eleventh Circuit affirmed the exclusion of Kendzior's testimony on the danger posed by crosswalk stripes because he did not test the coefficient of friction and so could not reliably opine on the danger that the stripes posed. There, Kendzior's "opinion [was] essentially that because Plaintiff fell, it must have been slippery." *Alsip v. Wal-Mart Stores E., LP*, 2015 WL 7013546, at \*4 (S.D. Ala. Nov. 12, 2015), *aff'd*, 658 F. App'x 944 (11th Cir. 2016). That

11

opinion could not be admitted because it was "based on flawed reasoning and speculation." *Alsip*,

658 F. App'x at 948. So too here. Kendzior's opinion about the danger posed by the stairs is

unsupported by data, evidence, testing, or reliable reasoning. Just as in *Alsip*, his opinion is

essentially that the stairs were dangerous because Jenkins slipped. That is not sufficiently reliable

to pass muster under Rule 702. Consequently, the Court **EXCLUDES** Opinion (1).

> 2.   <u>"The Defendants knew or reasonably should have known of the dangerous condition of the oil rig platform and stairway prior to Mr. Jenkins's slip and fall."</u>

Second, Kendzior seeks to testify that "[t]he Defendants knew or reasonably should have

known of the dangerous condition of the oil rig platform and stairway prior to [Jenkins's] slip and

fall." (Doc. 81 at 15.) This opinion does not rely on "scientific, technical, or other specialized

knowledge [to] help the trier of fact to understand the evidence or to determine a fact in issue."

*See* FED. R. EVID. 702. Whether the Defendants knew or should have known about the condition

on the stairs is a matter that lay jurors can determine for themselves. Kendzior arrives at this

conclusion by noting the instances in the record where the Defendants were apparently made aware

of an issue with the stairs. But Kendzior has no special insight into whether the Defendants knew

what was happening on the rig. As a result, no expert testimony on this issue is required. The Court

**EXCLUDES** Opinion (2).

> 3.   <u>"The Defendants failed to exercise reasonable care to reduce or eliminate the dangerous condition of the oil rig platform and stairway."</u>

Third, Kendzior seeks to testify that "[t]he Defendants failed to exercise reasonable care to

reduce or eliminate the dangerous condition of the oil rig platform and stairway." (Doc. 81 at 15.)

Kendzior arrives at this opinion by extrapolating from standards propounded by the American

Society of Testing and Materials, OSHA, and the American National Standards Institute ("which

serve as the standard of care for the energy production industry"). (*Id.* at 13–14.) After describing these standards in a section entitled "Nationally Recognized Industry Standards," Kendzior concludes that it "is the industry standard to immediately correct any known hazard once it has been identified." (*Id.* at 14.) Nevertheless, the Defendants "simply disregarded the fact that they created a pedestrian slip hazard by way of a contaminated stairway" and failed to take steps "to reduce or eliminate" the slippery condition on the stairs. (*Id.* at 14–15.) Consequently, Kendzior concludes that the Defendants behaved unreasonably and breached the standard of care. Kendzior's opinion regarding the reasonableness of the Defendants actions appears reliably rooted in nationally recognized industry standards and the narrative evidence in the case. If H&P disagrees, it can make that case to the jury. After all, "[i]t is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Still, Kendzior also seeks to testify as part of this opinion that the condition of the rig was "dangerous." As discussed in relation to Opinion (1), Kendzior deploys no reliable method to reach his conclusion about the danger posed by the rig's condition. As a result, while the Court **PERMITS** Kendzior to testify that "[t]he Defendants failed to exercise reasonable care to reduce or eliminate the . . . condition of the oil rig platform and stairway," the Court continues to **EXCLUDE** Kendzior's opinion regarding the dangerousness of the condition of the rig.

4. "Prior to Mr. Jenkins's fall, the Defendants had sufficient time to be aware of the dangerous condition and to remedy the condition by way of cleaning off the mud."

Fourth, Kendzior seeks to testify that, "[p]rior to [Jenkins's] fall, the Defendants had sufficient time to be aware of the dangerous condition and to remedy the condition by way of cleaning off the mud." (Doc. 81 at 15.) As with Kendzior's opinion about the Defendants'

13

knowledge of the stairs' condition, this opinion does not rely on "scientific, technical, or other specialized knowledge [to] help the trier of fact to understand the evidence or to determine a fact in issue." *See* FED. R. EVID. 702. Whether the Defendants had enough time to fix the condition of the rig is something that lay jurors can determine. Drawing this conclusion simply requires the jury to look at a timeline of events and evaluate whether remedial efforts could have been undertaken. No special expertise is required. As a result, the Court **EXCLUDES** Opinion (4).

5.  <u>"The dangerous condition of the oil rig platform and stairway was the proximate cause of Mr. Jenkins's slip-and-fall event."</u>

Fifth, Kendzior seeks to testify that "[t]he dangerous condition of the oil rig platform and stairway was the proximate cause of Mr. Jenkins's slip-and-fall event." (Doc. 81 at 15.) This opinion mirrors an opinion that Kendzior attempted to offer in *Brower v. Sprouts Farmers Market, LLC*, 2018 WL 1472479 (D.N.M. Mar. 23, 2018). In that case, Kendzior held himself out "as an expert in fall prevention and walkway safety." *Id.* at *6. Kendzior sought to testify that a mat caused the plaintiff to trip and suffer injuries. *Id.* But Kendzior's opinion on causation "boil[ed] down to this: 'We can see [the plaintiff] fall in the video. We cannot tell from the video what caused her to fall. However, Mr. Serna testified that she tripped on a buckle in the mat. Therefore, in my opinion, she tripped on a buckle in the mat.' " *Id.* The district court, however, determined that this testimony was simply "lay opinion wrapped in the cloak of expert testimony." *Id.* The jury could "see for itself what the video depicts and decide what weight to give [the] testimony[.]" *Id.* As a result, the court did not permit Kendzior to testify about what causation. *Id.* at *5–6.

The same reasoning attaches here. Kendzior's opinion on causation amounts to: "Jenkins stated that he slipped on a mixture of oil, mud, and water on the stairs, so it is my opinion that the condition of the stairs caused Jenkins to slip and fall." As in *Brower*, there is no expert rhyme or

14

reason underlying that opinion. As a result, Kendzior's input on causation would not help the jury. The Court **EXCLUDES** Opinion (5).

6. <u>"The manner of Mr. Jenkins's slip-and-fall and the dangerous condition of the stairway is consistent with the mechanics of a person falling while descending a stairway."</u>

Sixth, Kendzior seeks to testify that "[t]he manner of Mr. Jenkins's slip-and-fall and the dangerous condition of the stairway is consistent with the mechanics of a person falling while descending a stairway." (Doc. 81 at 15.) At the hearing, H&P essentially conceded—and the Court agrees—that the Court's ruling on Opinion (6) should follow its ruling on Opinion (3). Here, Kendzior deploys his substantial experience with slip-and-fall incidents to assess the mechanics of Jenkins's fall and his resulting injuries. This opinion will likely prove helpful to the jury. Still, as with Opinion (3), Kendzior again inserts the word "dangerous" when describing the condition of the rig. As the Court addressed above, Kendzior deploys no reliable method to reach this conclusion. As a result, while the Court **PERMITS** Kendzior to testify that "[t]he manner of Mr. Jenkins's slip-and-fall and the . . . condition of the stairway is consistent with the mechanics of a person falling while descending a stairway," the Court continues to **EXCLUDE** Kendzior's opinion regarding the dangerousness of the condition of the rig.[2]

## V.      CONCLUSION

For the reasons described above and on the record at the December 21, 2021 hearing, the Court makes the following rulings: Kendzior is **QUALIFIED** to serve as an expert in this case;

---

[2] The Court did not expressly exclude the word "dangerous" in Opinion (6) at the hearing, but it makes that ruling clear now.

Opinions (1), (2), (4), and (5) are **EXCLUDED**; and Opinions (3) and (6) are **PERMITTED IN PART** and **EXCLUDED IN PART**.

      **IT IS SO ORDERED.**

      **SIGNED** at Houston, Texas, on this 30th day of December, 2021.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE